IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **ROBERT WOODROFFE**, | Case No. 6:21-cv-01053-IM |
| Plaintiff, | **ORDER OF DISMISSAL** |
| v. | |
| **LINCOLN COUNTY COMMUNITY JUSTICE** *et al.*, | |
| Defendants. | |

**IMMERGUT, District Judge.**

Plaintiff Robert Woodroffe ("Woodroffe"), an adult in custody ("AIC") at Snake River Correctional Institution, brings this civil rights action pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleging claims against numerous defendants under federal and state law. This Court previously granted Woodroffe leave to proceed *in forma pauperis*. For the reasons set forth below,

PAGE 1 – ORDER OF DISMISSAL

this Court dismisses Woodroffe's Amended Complaint[1] (ECF No. 9) and denies his Motion for Temporary Restraining Order ("TRO") (ECF No. 3).

## BACKGROUND

The Amended Complaint is difficult to follow, but it appears Woodroffe's claims arise out of several incidents that occurred while he was out of custody on parole in early 2021. Woodroffe summarizes the underlying incidents as follows.

After Woodroffe's release from prison in December 2020, he was admitted to a county halfway house ("Taps House") in Newport, Oregon. (Compl. at 2, 4.[2]) According to Woodroffe, he "requested subsidy," but was forced to live at Taps House, which he alleges was "a drug house where people were smoking and doing meth by needle . . . and drinking." (Compl. at 4.) Woodroffe states that he "turned down all of it for six weeks," but ultimately "lost [his] willpower and used." (*Id.*)

On February 24, 2021, parole officers raided Taps House and confiscated from Woodroffe "several art books[3] and magazines, a box with over 4,000 photos[,] and a duffle[-]like pouch with photos," all of which apparently were pornographic in nature.[4] (Compl. at 5.) Woodroffe claims that when he went to claim his confiscated property pursuant to a property claim notice, the "art

---

[1] While various administrative issues were pending in this case, Woodroffe filed the Amended Complaint, which supersedes the original as the operative complaint in this case.

[2] The paragraphs in the amended complaint are inconsistently numbered. To avoid confusion, the Court references page numbers rather than specific paragraph numbers when citing to the amended complaint.

[3] Woodroffe provides no specific details as to the substance of the "art books" that were confiscated but indicates that one was a "sports illustrated swimsuit book." (Compl. at 14.)

[4] Woodroffe disagrees that any of the confiscated materials constituted pornography because they were "allowed in prison" and "none of the photos were nude; all were in swimsuits or panties, bras or lingerie." (Compl. at 5.)

PAGE 2 – ORDER OF DISMISSAL

books" were missing and he was informed that he could not have the rest of the confiscated materials while residing at Taps House. (*Id.*) Woodroffe alleges that as a result, he had to throw away twenty magazines and send his photographs to a friend's house in Ohio, "which [he] should not [have] had to do." (*Id.*).

At some point, Woodroffe's Taps House key card was deactivated. (*Id.*) Woodroffe nevertheless gained access to the building and found in his apartment a letter stating that he was being "kicked out" and warning him that his presence on the property would be considered trespassing. (*Id.*) Woodroffe alleges that he "grabbed a couple of things and left because [he] feared picking up a crime, [and that he was] forced to leave a lot of [his] personal belongings behind." (*Id.*) Woodroffe claims that his abandoned property was not secured or inventoried, and that it was left unattended "in a house with a history of drug users and theft[.]" (Compl. at 6.)

On May 21, 2021, Woodroffe was arrested at a homeless camp, presumably for violating the terms of his parole. (*Id.*) Woodroffe claims that at the time of his arrest, he had three backpacks in his possession containing items allegedly worth more than $60,000. (*Id.* at 6-7.) Woodroffe insists that all three backpacks and their contents were left at the homeless camp for others to take, but he then alleges that he received a property claim notice on May 25, 2021, which "threatened to dispose of [his] property." (*Id.* at 7.) In each of these incidents, Woodroffe claims that various defendants interfered with or confiscated his property without due process and endangered his life by placing him at Taps House after his release from prison.

**STANDARDS**

**I.     Screening the Amended Complaint**

The Court must dismiss an action initiated by an individual in custody seeking redress from a governmental entity or official if the Court determines that the action: (i) is frivolous or

PAGE 3 – ORDER OF DISMISSAL

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Dismissal of a pro se complaint for failure to state a claim "is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him to relief." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). The Court must construe *pro se* pleadings liberally and afford the plaintiff "the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). "Unless it is absolutely clear that no amendment can cure" defects in the complaint, "a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam).

## II.   Section 1983

Section 1983 is a "vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials. *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006). To state a claim under Section 1983, a plaintiff must allege facts from which a court may infer "(1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law." *Campbell v. Washington Dep't of Soc. Servs*, 671 F.3d 837, 842 n.5 (9th Cir. 2011) (citing *Ketchum v. Alameda Cty.*, 811 F.2d 1243, 1245 (9th Cir. 1987)).

Generally, "liability under § 1983 must be based on the personal involvement of the defendant." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). Accordingly, "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant" in the deprivation alleged. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979)); *see also King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987)

PAGE 4 – ORDER OF DISMISSAL

(noting that "state officials are not subject to suit under §1983 unless they play an affirmative part in the alleged deprivation of constitutional rights"). "A plaintiff must allege facts, not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights." *Barren*, 152 F.3d at 1194.

Alternatively, liability also may be imposed under section 1983 if the defendant sets into "'motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury.'" *Gini v. Las Vegas Metro. Police Dep't*, 40 F.3d 1041, 1044 (9th Cir. 1994) (quoting *Merritt v. Mackey*, 827 F.2d 1368, 1371 (9th Cir. 1987)). Section 1983, however, does not impose liability upon state officials for the acts of their subordinates under a *respondent superior* theory of liability. *Taylor*, 880 F.2d at 1045 (noting there is no *respondeat superior* liability under section 1983) (citing *Ybarra v. Reno Thunderbird Mobile Home Vill.*, 723 F.2d 675, 680-81 (9th Cir. 1984)). Rather, a "supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to prevent them." *Taylor*, 880 F.2d at 1045.

## DISCUSSION

### I. Woodroffe's Complaint

Woodroffe brings this action against numerous defendants, including: (1) Lincoln County Community Justice – Adult Parole and Probation ("LCAPP"); (2) Tony Campa ("Campa"), Director of LCAPP; (3) Susie O'Toole ("O'Toole"), Deputy Director of LCAPP; (4) Renaldo Alaya (Alaya), Parole Officer; (5) Mr Britt ("Britt"), Parole Officer; (6) Jane Doe ("Doe PO"), Parole Officer; (7) Ms. Tyrae Riswick ("Riswick"), Parole and Probation Technician (collectively, the "LCAPP Defendants"); (8) Phoenix Wellness Center ("PWC"); (9) Ashleigh Ramirez ("Ramirez"), Supervisor at PWC; (10) Savanna Wornana ("Wornana"), Intake Assessment

PAGE 5 – ORDER OF DISMISSAL

Counselor at PWC; and (11) Jane Doe ("Doe Receptionist"), Receptionist at PWC (collectively, the "PWC Defendants"). Woodroffe's alleges that "[a]ll . . . defendants have acted and continue to act under color of state law." (Compl. at 3.)

Woodroffe alleges that the defendants violated his First, Eighth, and Fourteenth Amendment rights. Woodroffe also appears to allege the defendants violated the Americans with Disabilities Act ("ADA"), the Health Insurance Portability and Accountability Act ("HIPAA"), and state law. As explained below, however, Woodroffe's complaint is deficient in several respects and must be dismissed.

### A. Sufficiency of Pleading

Federal Rule of Civil Procedure ("Rule") 8 requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and instructs that "each allegation must be simple, concise, and direct." FED. R. CIV. P. 8(a)(2), 8(d)(1). A "claim" is "the aggregate of operative facts which give rise to a right enforceable in the courts." *Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 840 (9th Cir. 2000). Compliance with Rule 8 therefore requires a plaintiff to plead a short and plain statement "identifying the transaction[s] or occurrence[s] giving rise to the claims and the elements of a prima facie case" for each claim alleged. *Id.*; *see also Kimes v. Stone*, 84 F.3d 1121, 1129 (9th Cir. 1996) (noting that Rule 8 requires that the complaint give "'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests'"); *Grindling v. Martone*, No. CIV. 12-00361 LEK, 2012 WL 3011748, at *2 (D. Haw. July 20, 2012) (noting that despite the Rules' flexible pleading policy, "a complaint must give fair notice and state the elements of the claim plainly and succinctly"); *see also Iqbal*, 556 U.S. at 678 (emphasizing that Rule 8 requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," and therefore a pleading "that offers 'labels and conclusions' or 'a formulaic recitation of the

elements of a cause of action will not do") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Although the amended complaint is divided into numbered paragraphs, they nevertheless are presented in a run-on narrative form that is redundant, convoluted, and disorganized, and that fails adequately to set forth the context or timing of the events giving rise to his claims, the specific conduct of each defendant, or how such conduct violated his constitutional rights in a manner that is easily understood upon first review. *See Little v. Baca*, No. CV 13-0373 PA (RZ), 2013 WL 436018, at *2 (C.D. Cal. Feb. 1, 2013) (explaining that "[t]he court (and any defendant) should be able to read and understand [the plaintiff's] pleading within minutes") (citing *McHenry v. Renne*, 84 F.3d 1172, 1177 (9th Cir. 1996)). Indeed, most of Woodroffe's allegations are vague, confusing, conclusory, and devoid of sufficient factual matter to demonstrate that he plausibly is entitled to relief. *See Twombly*, 550 U.S. at 555 n.3 (noting that "Rule 8(a)(2) . . . requires a 'showing,' rather than a blanket assertion, of entitlement to relief"). For example, Woodroffe simply concludes that defendant O'Toole "denied [his] freedom of speech [and] expression and retaliated against [him]" when she confiscated his magazines and photos, but he does not explain how O'Toole's conduct burdened his speech or otherwise constituted retaliation. In addition, Woodroffe includes in the amended complaint allegations concerning individuals who are not defendants to this action. In sum, Woodroffe fails to include in the amended complaint a short and plain statement that adequately explains the claims leveled against each defendant, and his allegations thus are insufficient to put the defendants on notice of the claims against them as required by Rule 8. Accordingly, the amended complaint must be dismissed. *See*, *e.g.*, *McHenry*, 84 F.3d at 1177–80 (upholding district court's Rule 8(a) dismissal of a complaint that was "argumentative, prolix, replete with redundancy, and largely irrelevant"); *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671,

PAGE 7 – ORDER OF DISMISSAL

674 (9th Cir. 1981) (holding that a complaint that is "verbose, confusing, and almost entirely conclusory" violates Rule 8).

The Court advises Woodroffe that if he files a second amended complaint, he must set forth a short and plain statement of his claims against each defendant and must provide more than just bare assertions of wrongdoing unconnected to any factual foundation. Additionally, he must exclude from an amended pleading "all preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like." Olson v. Hornbrook Cmty Servs. Dist., No. 2:15-cv-0646-MCE-CMK, 2016 WL 3126120, at *2 (E.D. Cal. June 2, 2016). Failure to do so will result in the dismissal of this action.

### B    The LCAPP Defendants

#### 1.    Improper Defendant

To the extent Woodroffe seeks to bring claims against LCAPP, it is a department within the Lincoln County government and therefore is not a "person" capable of being sued under Section 1983. See Rodriguez v. Cnty. of Contra Costa, 2013, Case No. C 13-02516 SBA, 2013 WL 5946112, at *3 (N.D. Cal. Nov. 5, 2013) (noting that "[a]lthough municipalities, such as cities and counties, are amenable to suit under Monell [v. N.Y. City Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)], sub-departments or bureaus of municipalities, such as police departments, are not generally considered 'persons' within the meaning of [Section] 1983") (citing Hervey v. Estes, 65 F.3d 784, 791 (9th Cir. 1995)); see also Cochran v. Newell, No. 17-56-BU-BMM-JCL, 2017 WL 9324532, at *5 (D. Mont. Dec. 5, 2017) (explaining that although municipalities and other local government bodies may be sued for damages, "subunits or departments of those local

governmental units are not persons distinct from the government[al unit] at large") (simplified). Accordingly, all claims against LCAPP must be dismissed.

### 2. Claims Related to Seizure and Improper Handling of Woodroffe's Property

Woodroffe's claims primarily focus on the allegedly improper confiscation and handling of Woodroffe's property by the individual LCAPP Defendants. Specifically, Woodroffe alleges that Campa, O'Toole, and Alaya[5] wrongfully confiscated his art books, magazines, and photos "when no policy or rule existed" that specifically prohibited such materials. (Compl. at 17.) Woodroffe further alleges Riswick deactivated his Taps House key card "where his property was and denied him access to get . . . his property." (*Id.* at 6.) Finally, Woodroffe alleges that Alaya left his property at a homeless camp where it would be subject to theft when he arrested Woodroffe in May 2021. (*Id.* at 14.)

#### a. Due Process

To the extent Woodroffe claims Campa, O'Toole, Alaya, and Riswick violated his right to due process, "[t]he Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "Thus, where the state provides a meaningful postdeprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes." *Barth v. Borbe*, No. 2:20-cv-2202 KJNP,

---

[5] Although Woodroffe alleges that Doe PO "was part of it," he states that he "now declines Jane Doe, parole officer, as a defendant." Accordingly, the Court dismisses the amended complaint as to Doe PO.

PAGE 9 – ORDER OF DISMISSAL

2021 WL 1691845, at *5 (E.D. Cal. Apr. 29, 2021) (citing *Piatt v. McDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985).

Here, Woodroffe states that Campa, O'Toole, and Alaya wrongfully confiscated his books, magazines, and photographs because "no policy or rule existed" that prohibited him from possessing them. Woodroffe further alleges that Riswick deactivated his key card and wrongfully prevented him from accessing his property at Taps House. Woodroffe does not have a due process claim for these purportedly unauthorized deprivations of his personal property because a meaningful state post-deprivation remedy is available. *See Osborne v. Williams*, Case No. CV. 09-1420-PA, 2010 WL 11537608, at *1 (D. Or. Jan. 12, 2010) (explaining that the Oregon Tort Claims Act provides an adequate post-deprivation remedy) (citing OR. REV. STAT. § 30.260 *et seq.*).

Moreover, Woodroffe alleges that Alaya "is guilty" of negligence for leaving his property at a homeless camp, but the "Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328 (1986). Even if Alaya's negligence could give rise to a due process claim, Woodroffe alleges that he received a property claim notice four days after his arrest, which suggests that his property was not simply left behind as he claims. Accordingly, Woodroffe fails to state a due process claim against Campa, O'Toole, Alaya, or Riswick.

### b. Retaliation

To the extent Woodroffe alleges that Campa, O'Toole, Alaya, and Britt retaliated against him in violation of the First Amendment,[6] he must allege that: "(1) a state actor took some adverse

---

[6] Although Woodroffe mentions "freedom of speech" and "freedom of expression" in the amended complaint, he provides no facts or allegations to demonstrate how any of the alleged deprivations of his property burdened his speech or expression.

PAGE 10 – ORDER OF DISMISSAL

action against an inmate, (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and citations omitted). The plaintiff also must demonstrate that a causal connection between the adverse action and the protected activity exists, that he suffered more than minimal harm, and that the retaliatory action actually chilled his speech. *Id.* at 568 n.11.

Throughout the amended complaint, Woodroffe alleges that Campa, O'Toole, and Alaya retaliated against him, but he fails to allege any facts from which the Court may infer that these defendants' conduct is attributable to a retaliatory motive. Indeed, Woodroffe provides little more than bare allegations that the deprivations at issue here constitute retaliation. "'[B]are allegations' of a retaliatory motive are insufficient to support a retaliation claim. *Drennon v. Blades*, Case No. 1:19-cv-00021-REB, 2019 WL 7195604, at *9 (D. Idaho Dec. 26, 2019) (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 n.4 (9th Cir. 1985)); *see also Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014) (explaining that the Ninth Circuit has "repeatedly held that mere speculation that defendants acted out of retaliation is not sufficient" to state a claim). Although Woodroffe alleges that Alaya retaliated against him because he ran from the police, running from the police is not constitutionally protected conduct. For these reasons, Woodroffe fails to state a retaliation claim.

### c.    Violations of State Criminal Law

Woodroffe alleges that Alaya, Campa, O'Toole, and Riswick committed "theft 1" by wrongfully taking his property. (Compl. at 6-8, 11-12, 15.) To the extent Woodroffe attempts to assert claims predicated on alleged violations of Oregon criminal law, such claims are not cognizable under Section 1983. *See Machin v. Costas*, No. CIV 09-444 IEG WVG, 2009 WL 3839325, at *10 (S.D. Cal. Nov. 16, 2009) (explaining that "there is no question that Plaintiff has

PAGE 11 – ORDER OF DISMISSAL

no private cause of action for violations of state criminal laws under [Section] 1983"). Moreover, insofar as Woodroffe attempts to hold these defendants accountable for crimes allegedly committed against him, a "criminal law [can] be enforced only by a . . . prosecutor, not by any private party." *Sulla v. Horowitz*, Civil No. 12-00449 SOM/KSC, 2012 WL 4758163, at *3 (D. Haw. Oct. 4, 2012). Accordingly, the Court dismisses any claims against Alaya, Campa, O'Toole, and Riswick that are premised on their alleged theft of Woodroffe's property.

### 3.    Claims Related to Woodroffe's Placement at Taps House

Woodroffe alleges that O'Toole put his "life and safety in danger when she denied subsidy and forced plaintiff into a halfway house [LCAPP] ran that was a drug house." (Compl. at 8.) Woodroffe claims that the LCAPP Defendants all knew of the "drug problem," but that no one did anything to "fix" it. (*Id.* at 9.)

To the extent Woodroffe seeks to hold O'Toole liable for denying his request for "subsidy," "there is no duty for parole officers to ensure that parolees obtain public assistance, housing or medical care." *Wallace v. Jones*, No. 2:12-cv-02018 TLN DAD P., 2013 WL 2190174, at *3 (May 20, 2013); *see also Cady v. Becarri*, No. CV 12-0084-M-DLC-JCL, 2012 WL 6048729, at *3 (D. Mont. Aug. 23, 2012) (rejecting the plaintiff's attempt to impose liability on the defendant for failing to fulfill her duties as a parole officer because parole officers do not have an affirmative duty to provide housing, mental health services, or medical care) (citing *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189 (1989)). That O'Toole arranged for Woodroffe to stay at Taps House when he "wanted subsidy instead" does not violate his constitutional rights.

Moreover, Woodroffe's allegations that O'Toole endangered his life and safety by "forcing" him to stay at a "drug house" are conclusory and fail to state a claim. Even if individuals staying at Taps House used drugs and drank in violation of the house rules as he alleges, there are

PAGE 12 – ORDER OF DISMISSAL

no facts from which the Court may infer that Woodroffe was in mortal danger, much less that O'Toole or any of the other LCAPP Defendants knowingly placed him in such danger. Indeed, Woodroffe alleges in the amended complaint that after he informed O'Toole about theft and drug use at Taps House, "people got arrested or kicked out." (Compl. at 13.) Woodroffe thus cannot legitimately allege that the LCAPP Defendants did nothing to "fix" the alleged drug problems occurring at Taps House that he grieves here. Accordingly, Woodroffe fails to state a claim against the LCAPP Defendants with respect to his placement at Taps House.

### 4. ADA Violations

Woodroffe alleges that O'Toole violated his rights under the ADA when she interfered with his efforts to start a business by confiscating his photos. (Compl. at 13.) Woodroffe also alleges generally that he was "denied treatment in violation of ADA after being forced to live in a drug house for five months in unsafe living conditions[.]" (*Id.* at 1-2.)

To state an ADA claim, Woodroffe must set forth a separate claim for relief containing sufficient facts to support a reasonable inference that "(1) he is an individual with a disability; (2) []he is otherwise qualified to participate in or receive the benefit of a public entity's services, programs or activities; (3) []he was either excluded from participation in or denied the benefits of the public entity's services, programs or activities or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits or discrimination was by reason of h[is] disability." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1036 (9th Cir. 2018) (quoting *Sheehan v. City & Cnty. of S.F.*, 7143 F.3d 1211, 1232 (9th Cir. 2014)).

Woodroffe states, in conclusory fashion, that he is disabled, and that O'Toole violated the ADA by confiscating his magazines and photos. He does not allege sufficient facts, however, to establish that he has a qualifying disability as defined by the ADA or that O'Toole denied him

participation in or the benefit of services, programs, or activities for which he was qualified or otherwise discriminated against him on account of that disability. Moreover, to the extent Woodroffe alleges generally that he was denied unspecified treatment in violation of the ADA, the Court notes that "[t]he ADA prohibits discrimination *because* of disability, not inadequate treatment for disability." *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1022 (9th Cir. 2010), *overruled on other grounds by Castro v. City of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (en banc) (emphasis added). Accordingly, Woodroffe fails to state an ADA claim against O'Toole.

### C. The PWC Defendants

#### 1. Section 1983 Does Not Apply to Non-State Actors

Woodroffe also seeks to bring claims against PWC, a "drug treatment facility . . . [that] help[s] people in the community that have drug or alcohol problems get various kinds of treatment[,]" and Ramirez, Wornana, and Doe Receptionist, all of whom work at PWC in various capacities. (Compl. at 3.)

"A civil rights plaintiff suing a private individual under [Section] 1983 must demonstrate that the private individual acted under color of state law; plaintiffs do not enjoy Fourteenth Amendment protections against 'private conduct abridging individual rights.'" *Chatman v. Super 8 Motel, Oceanside*, 2018 WL 934638, at *4 (S.D. Cal. Feb. 15, 2018) (quoting *Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002)). Indeed, "[t]he under-color-of-state-law element of [Section] 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotation marks omitted); *see also Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991) (noting that "[p]rivate parties are not generally acting under state law"). Section 1983 may apply to a private party, however, where "he

is a willful participant in joint action with the State or its agents." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 980 (9th Cir. 2003) (simplified).

Woodroffe alleges no facts to suggest that the PWC Defendants are state actors, nor does he allege sufficient facts to establish that any of these defendants willfully participated in joint action with the State, *Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989), or that they "engaged in a conspiracy or acts in concert with state agents to deprive [Woodroffe's] constitutional rights." *Fonda v. Gray*, 707 F.2d 435, 437 (9th Cir. 1983). Accordingly, Woodroffe cannot bring claims against the PWC defendants under Section 1983.

### 2. HIPAA Violations

Woodroffe's claims against the PWC Defendants appear largely to be predicated on alleged violations of HIPAA. However, "[a] plaintiff may only bring suit if Congress has provided a private right of action by which an individual may seek to enforce statutory provisions." *Fogel v. Dep't of Health and Hum. Servs.*, No. 1:20-cv-000762-MC, 2020 WL 2499534, at *2 (D. Or. May 13, 2020). "The ability to bring a private right of action may be authorized by the explicit statutory text or, in some instances, may be implied from the statutory text." *Nisqually Indian Tribe v. Gregoire*, 623 F.3d 923, 929 (9th Cir. 2010).

As noted above, Woodroffe cannot bring claims arising from the PWC Defendants' private conduct pursuant to Section 1983, but even if he could, "[n]o express or private right of action exists under HIPAA." *Wallace v. Wash. Cnty Jail*, No. 3:18-cv-1975-SI, 2019 WL 2583487, at *3 (D. Or. June 24, 2019). Because Woodroffe's claims arising out of alleged violations of HIPAA are not cognizable, he fails to state a claim against the PWC Defendants. Accordingly, Woodroffe's claims against PWC, Ramirez, Wornana, and Doe Receptionist must be dismissed.

///

PAGE 15 – ORDER OF DISMISSAL

### 3. Improper Joinder

Even if Woodroffe stated a cognizable claim for relief against the PWC Defendants, those claims would be improperly joined in this action. Although a plaintiff may bring multiple claims against a single defendant in one action, *see* FED. R. CIV. P. 18 (instructing that in general, "[a] party . . . may join, as independent or alternative claims, as many claims as it has against an opposing party"), unrelated claims against different defendants must be brought in a separate lawsuit. *See* FED. R. CIV. P. 20(a)(2) (authorizing joinder only where "any right to relief is asserted against [the defendants] jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . . any question of law or fact common to all defendants will arise in the action"); *see also George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (explaining that under Rule 18(a), "multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2" and "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [suits involving multiple claims and defendants] produce, but also to ensure that [individuals in custody] pay the required filing fees—for the Prison Litigation Reform Act limits to [three] the number of frivolous suits or appeals that any [AIC] may file without prepayment of the required fees"); *Washington v. Cal. Dep't of Corr.*, No. 2:15-cv-2302-MCE-CMK-P, 2016 WL 6599812, at *1 (E.D. Cal. Nov. 7, 2016) (quoting *George* for its holding that unrelated claims involving unrelated defendants must be raised in a separate suit).

The amended complaint is less than clear, but it appears that Woodroffe's claims against the PWC Defendants do not arise out of the same transaction or occurrence as his claims against the LCCJ Defendants as required by the Rules. As explained above, "claims involving different parties cannot be joined together in one complaint if the facts giving rise to the claims were not

PAGE 16 – ORDER OF DISMISSAL

factually related in some way—that is, if there was not 'similarity in the factual background.'" *Blackwell v. Jenkins*, No. 2:19-cv-0442 TLN DB P, 2019 WL 5784900, at *3 (E.D. Cal. Nov. 6, 2019) (quoting *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997)). That Woodroffe's claims apparently stem from events that occurred while he was out of custody on parole is insufficient to create a common transaction or occurrence to support joinder in this case. *See Coughlin*, 130 F.3d at 1350 (explaining that the "same transaction" requirement requires more than general allegations to create a common transaction or occurrence).

### D.  Supplemental Jurisdiction

To the extent Woodroffe attempts to bring additional claims against all defendants pursuant to state law, the Court notes that it may exercise supplemental jurisdiction over such claims, but that Woodroffe must first have a cognizable claim for relief under federal law. *See* 28 U.S.C. § 1367(a) (instructing that in any civil action in which the district court has original jurisdiction, the "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," except as provided in subsections (b) and (c)). As explained above, Woodroffe fails to assert a cognizable claim under federal law. The Court therefore declines to exercise supplemental jurisdiction over any remaining state law claims.

## II.  Motion for TRO

"The purpose of a [TRO] or preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *Ardds v. Hicks*, No. 1:19-cv-01738-DAD-SAB (PC), 2020 WL 8614084, at *1 (E.D. Cal. Aug. 25, 2020) (citing *Univ.*

*of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981)). In deciding whether to grant a motion for TRO, courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that the analysis "is substantially identical" with respect to a preliminary injunction and a temporary restraining order). A plaintiff seeking a preliminary injunction must show that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22.

Woodroffe seeks to enjoin LCAPP from destroying his property "that [its agents] wrongly held and took." (Mot. for TRO (ECF No. 3), at 1.) Woodroffe further requests a court order requiring LCAPP to inventory, photograph, and hold his property "until it can be determined how to deal with it[.]" (*Id.*) Woodroffe attaches to his motion a Property Claim Notice dated May 25, 2021 (the "Notice"), advising him that LCAPP had "possession of property belonging to [him] that was seized, unclaimed or abandoned[,]" and providing detailed instructions as to how Woodroffe or someone acting on his behalf could claim his property. (Mot. for TRO, Ex. 1.) The Notice warns that if Woodroffe did not retrieve the property within thirty days, he would "lose [his] interest in that property per [Oregon Revised Statute §] 98.245." (*Id.*)

Woodroffe filed the original complaint and Motion for TRO on July 14, 2021, nearly three weeks after the thirty-day period outlined in the Notice expired.[7] At that time, title to Woodroffe's unclaimed property already had "pass[ed] to the removing authority free of any interest or encumbrance" in favor of Woodroffe under Oregon law. OR. REV. STAT. § 98.245(f). Woodroffe thus filed this action and requested preliminary relief after he already had forfeited his ownership interest in the property at issue, and therefore his Motion for TRO is moot. *Cf. Lend Lease (US) Construction, Inc. v. El Comino Comm. Coll. Dist.*, CV 14097446 SJO (Ex), 2014 WL 12564348, at *6 (C.D. Cal. Oct.16, 2014) (explaining that "[w]here a TRO would no longer preserve the status quo that existed when [the plaintiff] filed the Application, the Application for a TRO is moot").

Moreover, Woodroffe fails to provide any facts from which the Court may conclude that he is likely to suffer irreparable harm if preliminary relief is denied. Woodroffe no longer had a viable interest in the property upon filing this lawsuit, and therefore Woodroffe will not suffer injury if that property is not inventoried, photographed, and held pending resolution of this matter as he requests. Additionally, Woodroffe fails to demonstrate that he is likely to succeed on the merits, that the balance of equities weighs in his favor, or that an injunction serves the public interest in this case. Indeed, as explained in Section I (A), *supra*, Woodroffe's claims concerning LCAPP employees' improper confiscation and handling of his property generally cannot be vindicated in Federal Court. Accordingly, the imposition of a temporary restraining order is not warranted here.

///

---

[7] There is no indication that Woodroffe, who was in custody at the Lincoln County Jail following his arrest on May 21, 2021, made any attempt to have someone claim his property on his behalf.

PAGE 19 – ORDER OF DISMISSAL

## CONCLUSION

Based on the foregoing, this Court DISMISSES Woodroffe's Amended Complaint (ECF No. 9) for failure to state a claim and for improper joinder. Woodroffe may file an amended complaint, within thirty days of the date of this Order, curing the deficiencies noted above. Failure to file an amended complaint will result in the dismissal of this proceeding.

This Court DENIES Woodroffe's request for temporary restraining order (ECF No. 3) for the reasons stated above.

**IT IS SO ORDERED.**

DATED this __10th__ day of November, 2021.

*Karin J. Immergut*
Karin J. Immergut
United States District Judge